IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 06-cv-4805, 08-cv-5555 Magistrate Judge Cox |
| ROADWAY EXPRESS, INC., and YRC, INC., | ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| WILLIAM BANDY, TOBY LEE, LUSHAWN SMITH, MARK WILLIAMS CLARENCE STOKES, FRED THOMPSON, CLARENCE ROYSTER, ANTAWON L. MARSHAL, NERVILLE COX and CLEOPHUS MARSHALL, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 10-cv-5304 Magistrate Judge Cox |
| ROADWAY EXPRESS, INC. and YRC, INC., | ) ) | |
| Defendants. | ) ) ) | |

## SECOND AMENDED CONSENT DECREE

### THE LITIGATION

1.      Plaintiff Equal Employment Opportunity Commission (the "EEOC") filed suit

1

(case number 06 CV 4805) against Defendant Roadway Express, Inc., ("Roadway") under

Title VII of the Civil Rights Act of 1964 (the "Title VII"), 42 U.S.C. §2000e, et seq.,

("Chicago Heights Title VII case"), alleging that Roadway discriminated against African-

American employees at its Chicago Heights facility. The EEOC alleged that Roadway violated

Title VII by unlawfully discriminating against a class of Black employees by fostering a hostile

work environment based upon race, and unlawfully discriminated against its Black employees

in the terms and conditions of employment. The EEOC amended its complaint to add YRC, Inc.

("YRC") as a defendant. Roadway employces William Bandy, Toby Lee, Lushawn Smith,

Mark Williams, Clarence Stokes, Fred Thompson, Clarence Royster, Antawon L. Marshal,

Nerville Cox, and Cleophus Marshall ("Named Intervenors") intervened individually in the

EEOC's action.

2.      Named Intervenors' separate intervening complaint alleged that Roadway

violated Title VII and Section 1981, 42 U.S.C. §1981, by discriminating against them and a

class of Black dockworkers at Roadway's Chicago Heights and Elk Grove Village facilities

because of their race. In their complaint, Named Intervenors alleged that Roadway unlawfully

discriminated against them and other Black employees by fostering a hostile work environment

based upon race, and unlawfully discriminated against them and other Black employees in the

terms and conditions of employment, specifically with regard to job assignments and discipline.

The Named Intervenors, in their intervening complaint, sought only injunctive relief and

punitive damages. The Named Intervenors amended their complaint to add YRC, Inc.,

2

("YRC") as a defendant. On August 24, 2010, Named Intervenors' §1981 claims were severed and assigned case number 10 CV 5304. That case is consolidated for the purpose of entering this decree.

      3.     On September 29, 2008, the EEOC filed suit (case number 08 cv 5555) against Defendant Roadway Express, Inc. ("Roadway") under Title VII of the Civil Rights Act of 1964 (the "Title VII"), 42 U.S.C. §2000e, et seq., ("Elk Grove Title VII case"), alleging that Roadway discriminated against African-American employees at its Elk Grove Village facility. The EEOC alleged that Roadway violated Title VII by unlawfully discriminating against a class of Black employees by fostering a hostile work environment based upon race, and unlawfully discriminated against its Black employees in the terms and conditions of employment. The EEOC amended its complaint to add YRC, Inc., ("YRC") as a defendant. Without objection, the EEOC's Chicago Heights Title VII case and the Elk Grove Title VII case were consolidated.

      4.     In the interest of resolving this matter, and as a result of having engaged in comprehensive settlement negotiations, all parties in all of the above cases have agreed that these actions pertaining to the Chicago Heights and Elk Grove Village facilities should be finally resolved by Entry of this Consent Decree (hereafter "Decree").

      5.     By entering into this Consent Decree, no party makes any admission regarding any claims or potential clams or any defenses thereto.

      6.     This Decree fully and finally resolves any and all issues and claims arising out of

3

the Complaints filed by the EEOC, the intervening complaint filed by the Named Intervenors, and the Section 1981 complaint filed by Named Intervenors.

## DEFINITIONS

7.     In addition to the terms defined elsewhere in the Consent Decree, the following terms when used herein shall have the following meanings:

        A.     "EEOC Settlement Class" shall mean all African-American employees of the Defendants working at their Chicago Heights or Elk Grove Village facilities in the dockworker, switcher, or janitor positions including seniority list, percenter, and casual positions, at any point between March 13, 2002 and the present, other than the Named Intervenors.

        B.     "§1981 Settlement Class" shall mean all African-American employees of the Defendants working at their Chicago Heights or Elk Grove Village facilities as a dockworker including switcher, seniority list, percenter, and casual positions, at any point between April 9, 2003 and the present who have not opted-out of the §1981 litigation (10 CV 5304).

        C.     "Named Intervenors" shall mean William Bandy, Nerville Cox, Toby Lee, Antawon L. Marshal, Cleophus Marshall, Clarence Royster, Lushawn Smith, Clarence Stokes, Fred Thompson, and Mark Williams.

        D.     "Named Intervenors' Counsel" refers to Kinoy, Taren, and Geraghty P.C.

4

E.    "§1981 Named Plaintiffs" refers to William Bandy, Nerville Cox, Toby Lee, Antawon L. Marshal, Cleophus Marshall, Clarence Royster, Lushawn Smith, Clarence Stokes, Fred Thompson, and Mark Williams.

F.    "§1981 Class Counsel" refers to Kinoy, Taren, and Geraghty P.C.

G.    "Defendant" or "Company" shall mean YRC, Inc., and any of its predecessors or successors in interest including Roadway Express, Inc.

H.    "Parties" means the EEOC, Named Intervenors, §1981 Named Plaintiffs, and Defendant.

I.    "Plaintiffs" means the EEOC, Named Intervenors, and §1981 Named Plaintiffs.

J.    "Claimant" means each of the individuals identified by the EEOC other than the Named Intervenors, who is eligible to receive a monetary award pursuant to this Decree.

K.    "Preliminary Approval of the Consent Decree means the date when the United States District Court for the Northern District of Illinois has granted conditional approval of the proposed Consent Decree, subject to notice and a fairness hearing with regard to the 1981 class settlement.

L.    "Final Approval of the Consent Decree" means the date when notice is received by the parties through the Court's ECF system that the United States District Court for the Northern District of Illinois, Eastern Division has

5

approved the EEOC's distribution of the EEOC Settlement Fund.

M. "YRC's Chicago break bulk dock operation" means (i) YRC's existing Chicago Heights breakbulk facility located at 2000 East Lincoln Highway, Chicago Heights, IL 60411, and (ii) if the existing Chicago Heights breakbulk facility is closed down or substantially moved to another YRC breakbulk facility within fifty (50) miles of the existing Chicago Heights facility, then any additional YRC breakbulk facility where more than fifty (50) percent of the African-American workers at the YRC breakbulk facility are members of either the EEOC Settlement Class or the §1981 Settlement Class.

### FINDINGS

8.     Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the parties, the Court finds the following:

a.     This Court has jurisdiction of the subject matter of this action and of the parties.

b.     The Court has jurisdiction over the Guaranty (attached hereto as Exhibit C) and over the Guarantor (as defined in the Guaranty) for the sole purpose of enforcing the Guaranty or resolving any dispute arising thereunder.

c.     The terms of this Decree are adequate, fair, reasonable, equitable, and just. The rights of the EEOC, YRC, the Named Intervenors, the EEOC Settlement Class, §1981 Settlement Class, and the public interest are adequately protected by this Decree.

6

d.    This Decree conforms to the Federal Rules of Civil Procedure, Title VII,

§1981, and is not in derogation of the rights or privileges of any person.  The Entry of this

Decree will further the objectives of Title VII and Section 1981 and will be in the best interests

of EEOC, YRC, the Named Intervenors, the EEOC Settlement Class, §1981 Settlement Class,

and the public.

e.    The only monetary distributions are to be made out of the *EEOC v.

Roadway* cases and not pursuant to the *Bandy v. YRC, Inc.* §1981 class litigation.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

INJUNCTION AGAINST RACE DISCRIMINATION

9.    YRC and its officers, agents, management (including supervisory employees),

successors and assigns, and all those in active concert or participation with them, or any of them,

are hereby enjoined from discriminating against Black employees at YRC's Chicago break bulk

dock operation on the basis of their race, including harassment, work assignments, discipline, the

movement from casual to permanent, and promotion to switcher (also known as spotter or

hostler) positions.

INJUNCTION AGAINST RETALIATION

10.    YRC, its officers, agents, management (including supervisory employees),

successors, assigns and all persons acting in concert with it shall not engage in any form of

retaliation against any person because such person has opposed any practice at YRC's Chicago

break bulk dock operation made unlawful under Title VII, filed a Charge of Discrimination

under Title VII, testified or participated in any manner in any investigation, proceeding, or

hearing under Title VII relating to YRC's Chicago break bulk dock operation, or asserted any

rights under this Decree.

## MONETARY RELIEF

11.     The gross total sum of ten million dollars ($10,000,000) shall be distributed to the

Claimants, Named Intervenors and Named Intervenors' Counsel in accordance with the terms of

this Decree.

## ESTABLISHMENT OF SETTLEMENT FUNDS & ALLOCATION OF MONETARY RELIEF

12.     YRC shall deposit or cause to be deposited within five (5) business days of the

Preliminary Approval of the Consent Decree, the aggregate sum of Eight Million Five Hundred

Thousand dollars ($8,500,000.00) as follows:

a. Six Million Five Hundred Thirty-Two Thousand Two Hundred Fifty dollars

($6,532,250.00) into an escrow account administered by the Claims Administrator

designated in Paragraph 16 to establish a Settlement Fund (the "EEOC Settlement Fund")

for the purpose of providing monetary awards to Claimants. The EEOC Settlement Fund

shall accrue interest at no less than the T-Bill rate. Any interest accrued by the EEOC

Settlement Fund will be used to pay expenses associated with the administration of the

EEOC Settlement Fund. Other than withdrawal of accrued interest, all payments from

this EEOC Settlement Fund shall go to Claimants only in accord with the distribution

approved by the Court pursuant to Paragraphs 34 to 37, or pursuant to Paragraph 38

below.

b. One Million Nine Hundred Sixty-Seven Thousand Seven Hundred Fifty dollars ($1,967,750.00) to an escrow account ("Intervenors' Escrow Account") controlled by Named Intervenors' Counsel with distribution of that fund to be exclusively handled by Named Intervenors' Counsel and all payments to be made upon Final Approval of the Consent Decree to Named Intervenors and Named Intervenors' Counsel as follows:

> (i) One-million four hundred and sixty-seven thousand, seven hundred and fifty dollars ($1,467,750.00) shall be paid to Kinoy, Taren & Geraghty P.C. as costs and attorneys fees;
>
> (ii) Five-hundred thousand dollars ($500,000.00) shall be equally distributed to the ten (10) Named Intervenors.

13.     In addition to the payments made pursuant to Paragraph 12, above, YRC or any successor or assign to YRC shall pay the gross aggregate sum of One Million Five Hundred Thousand dollars ($1,500,000) as follows:

a. On or before November 1, 2011, YRC or any successor or assign shall deposit (i) Three Hundred Eighty Four Thousand Two Hundred Fifty dollars ($384,250.00) into the EEOC Settlement Fund, and distribution will occur in accord with the distribution approved by the Court pursuant to Paragraph 34; and (ii) One Hundred Fifteen Thousand Seven Hundred Fifty dollars ($115,750.00) into Intervenors' Escrow Account for distribution by Intervenors' Counsel as follows:

9

(1)     Thirty-two thousand two hundred and fifty dollars ($32,250.00) shall be

paid to Kinoy, Taren & Geraghty P.C. as costs and attorneys fees;

(2)     Eighty-three thousand five hundred dollars ($83,500.00) shall be equally

distributed to the ten (10) Named Intervenors.

b.  On or before November 1, 2012, YRC or any successor or assign shall deposit (i)

Three Hundred Eighty Four Thousand Two Hundred Fifty dollars ($384,250.00) into the

EEOC Settlement Fund and distribution shall occur in accord with the distribution

approved by the Court pursuant to Paragraph 34; and (ii) One Hundred Fifteen Thousand

Seven Hundred Fifty dollars ($115,750.00) into Intervenors' Escrow Account for

distribution by Intervenors' Counsel as follows:  One hundred and fifteen thousand seven

hundred and fifty dollars ($115,750.00) shall be equally distributed to the ten (10) Named

Intervenors.

c.  On or before November 1, 2013, YRC or any successor or assign shall deposit (i)

Three Hundred Eighty-Four Thousand Two Hundred Fifty dollars ($384,250.00) into the

EEOC Settlement Fund and distribution shall occur in accord with the distribution

approved by the Court pursuant to Paragraph 34; and (ii) One Hundred Fifteen Thousand

Seven Hundred Fifty dollars ($115,750.00) into Intervenors' Escrow Account for

distribution by Intervenors' Counsel as follows:  One hundred and fifteen thousand seven

hundred and fifty dollars  ($115,750.00) shall be equally distributed to the ten (10)

Named Intervenors.

10

d. If YRC fails to make any of the payments as set forth in this paragraph, EEOC and

Named Intervenors may pursue their rights as set forth in the Guaranty attached as

Exhibit C.

14.     All of the funds payable to the ten (10) Named Intervenors and Named

Intervenors' Counsel will be distributed among Named Intervenors and Named Intervenors'

Counsel in accordance with agreement between the Named Intervenors and Named Intervenors'

Counsel and as outlined in Paragraphs 12(b) and 13. Named-Intervenors will provide a release

of claims as set forth in Exhibit E. EEOC played no role in the allocation of these payments. All

payments to the Named Intervenors and Named Intervenors' Counsel are to be paid in

accordance with Paragraphs 12(b) and 13 and no amount shall be paid to either the Named

Intervenors or Named Intervenors' Counsel out of the EEOC Settlement Fund.

15.     All of the funds payable to the EEOC Settlement Class will be distributed in

accord with the distribution process described in this Decree at Paragraphs 34-38. No amounts

from the EEOC Settlement Fund shall be paid to Named Intervenors or Named Intervenors'

Counsel.

CLAIMS ADMINISTRATOR

16.     Settlement Services, Inc., shall act as Claims Administrator who shall: (a) verify

addresses using the national change of address database and mail notices and forms relating to

the settlement, claims forms and claims notices; (b) receive objections, opt-outs and other

communications from §1981 Settlement Class Members regarding the settlement of the §1981

11

Class Action; (c) receive claims forms for the EEOC Settlement Fund; (d) transmit notifications

of monetary awards; (e) issue checks to eligible Claimants from the EEOC Settlement Fund; (f)

issue related tax documents; and (g) perform such other administrative tasks as may facilitate the

claims process.

      17.     Interest accrued by the EEOC Settlement Fund will be used to cover costs

associated with the distribution of the above funds to Claimants. To the extent accrued interest

does not cover these costs, all outstanding Claims Administrator costs shall be paid by YRC,

including, without limitation, all costs associated with the creation of the EEOC Settlement

Fund, all costs to be paid by the Claims Administrator, and all costs related to the issuance and

mailing of notices and checks in accordance with this Decree, along with the Employer's portion

of any required taxes.

<u>FAIRNESS HEARING/APPROVAL OF §1981 SETTLEMENT CLASS</u>

      18.     For the purposes of injunctive and declaratory relief provided in this Decree, the

§1981 Settlement Class under 10 CV 5304, is certified under Federal Rule of Civil Procedure

23(b)(2), with discretionary Notice and opt-out procedures, and consists of all African-American

employees of the Defendant working as a dockworker including switcher, seniority list,

percenter, and casual positions at the Chicago Heights or Elk Grove Village terminals, at any

point between April 9, 2003 and the entry of this Decree.

      19.     Within five (5) business days of the Entry of the Preliminary Approval of the

Consent Decree, YRC shall transmit to the Claims Administrator a computer-readable list

12

containing the full names, social security numbers, and last known addresses for all of

individuals comprising the §1981 Settlement Class. Prior to submitting the list of names,

addresses and known social security numbers of the §1981 Settlement Class to the Claims

Administrator, YRC shall provide Class Counsel an opportunity to review the list.

20.     Notice to §1981 Settlement Class Members. Within fifteen (15) business days

after the Preliminary Approval Date, the Claims Administrator shall provide notice via first class

mail to all §1981 Class Members in a form approved by the Court: (a) stating that there is a

proposed settlement of the claims in the §1981 Class Action; (b) describing the §1981 Class

Action, the terms of the settlement, and that the § 1981 class members may submit a Claim Form

in the EEOC claims process for monetary relief; (c) indicating that the Court will hold a hearing

at which time the Court will consider the fairness, adequacy and reasonableness of the proposed

settlement; (d) indicating that §1981 Settlement Class Members may elect to opt-out of the

proposed settlement; and (e) indicating that §1981 Settlement Class Members who do not opt-out

may submit written comments regarding the settlement or appear at the fairness hearing. A copy

of the Notice to be submitted to the Court for approval is attached hereto as Exhibit D.

21.     YRC shall reasonably cooperate with the Claims Administrator and Class Counsel

with respect to identifying and locating members of the §1981 Settlement Class. The Claims

Administrator will perform a computer database trace for the current addresses of the §1981

Settlement Class Members formerly employed by the Company.

22.     Fairness Hearing. A Fairness Hearing to consider the overall fairness,

13

reasonableness and adequacy of the proposed settlement of the §1981 Class Action shall be held

approximately thirty-five (35) days after the mailing of the notice described in Paragraph 20

above, on a date specified by the District Court.

23.     Appearance By Class Members at Fairness Hearing.  Any member of the §1981

Settlement Class may appear at the Fairness Hearing and be heard in opposition to the overall

fairness, reasonableness and adequacy of the proposed settlement of the §1981 Class Action.

However, subject to the Court's discretion, no person shall be heard in opposition to the

proposed settlement unless such person has provided to the Claims Administrator a notice of

intention to appear and statement of position of the position to be asserted, at least ten (10) days

prior to the Fairness Hearing.  The Claims Administrator shall transmit any such notices and

statements to the District Court and counsel no later than five (5) days prior to the Fairness

Hearing.

24.     Written Statements Regarding the Proposed Settlement.  Members of the §1981

Settlement Class may also submit comments in writing regarding the overall fairness,

reasonableness and adequacy of the proposed settlement of §1981 Class Action.  All written

statements regarding the proposed settlement must be sent to and received by the Claims

Administrator at least ten (10) days prior to the Fairness Hearing.  In order for a written

statement to be considered, the statement must include the individual's name and address.  The

Claims Administrator shall transmit any such written statements to the District Court no later

than five (5) days prior to the Fairness Hearing and shall provide copies of such written

14

statements to all counsel.

25.     Exclusions. Members of the §1981 Settlement Class may exclude themselves, or opt out of the proposed settlement of the §1981 Class Action. Any request for exclusion must be in writing, must include the individual's name and address and must be sent to and received by the Claims Administrator at least ten (10) days prior to the Fairness Hearing. The Claims Administrator shall transmit any such requests for exclusion to the District Court and all counsel no later than five (5) days prior to the Fairness Hearing. YRC may file either a motion to void the settlement or a motion opposing Final Approval if the number of opt-outs is inconsistent with the purpose and goals of the Consent Decree.

26. Release of Claims by the 1981 Settlement Class. Upon Final Approval of the Decree, YRC, Inc. and Roadway Express, Inc. and its directors, officers, managers, agents, employees, attorneys, insurers, and for each of the foregoing, their respective parents, affiliates, subsidiaries, successors and assigns, shall be fully released and forever discharged from any and all individual and/or class-wide claims, demands, complaints, rights and causes of actions of any kind, known or unknown, by each member of the 1981 Settlement Class who has not opted-out, including their heirs, assigns and estates, whether seeking monetary and/or equitable relief of any sort, which arise out of or are related to the underlying operative facts in the intervening complaint filed by the Named Intervenors and the Section 1981 claims filed by Named Intervenors which were, or could have been asserted, all of which are released, extinguished and dismissed pursuant to this Consent Decree. This release is

15

final and shall survive the expiration of the Decree's term. This release is not applicable to any claim that has been raised or could be raised in *EEOC v. Yellow Transp.*, 09 C 7693 (N.D. Ill.) or *Brown et al v. Yellow Transp.*,08 C 5908 (N.D. Ill.) regarding conduct or events occurring at YRC's former Chicago Ridge Facility.

PROCEDURE FOR NOTICE OF MONETARY SETTLEMENT

27.    Within five (5) business days of the Entry of the Preliminary Approval of the Consent Decree, EEOC shall transmit to the Claims Administrator a computer-readable list containing the full names, social security numbers (where available to EEOC), and last known addresses for all of individuals comprising the EEOC Settlement Class. Prior to submitting the list of names, addresses and known social security numbers to the Claims Administrator, EEOC will verify with YRC that all persons covered by the EEOC Settlement Class definition are included on the list by providing YRC an opportunity to review and revise the list. EEOC has the discretion to identify the Claimants, provided that the list includes all persons covered by the EEOC Settlement Class definition.

28.    Within fifteen (15) business days after the Entry of the Preliminary Approval of the Consent Decree, the Claims Administrator shall provide a notice (attached to this Decree as Exhibit F), via first class mail, to all persons in the EEOC Settlement Class in a form approved by the Court: (a) stating that there is a proposed settlement of the claims in this litigation; (b) describing the litigation and the terms of the settlement, including the factors that will be considered in distributing the settlement funds; and (c) enclosing a claims form and claims

16

instructions (attached to this Decree as Exhibit G). The Claims Administrator shall make reasonable efforts to locate persons in the EEOC Settlement Class whose Claim Packages are returned as undeliverable.

## CLAIMS PROCESS

29.     Claimants who seek to recover monetary compensation must complete a claim form (Exhibit F) and cause it to be filed with the Claims Administrator within sixty (60) days after the Preliminary Approval of the Consent Decree. The claim form must be postmarked on or before such date in order to be considered timely. All claim forms must be signed under penalty of perjury to be considered. All EEOC Settlement Class members who have given a deposition, provided a signed Affidavit, or returned an EEOC Questionnaire in this case shall be considered to have filed a timely claim. The EEOC, in its discretion, may require said claimant to provide additional information in support of said claim.

a.     Late Claims.  For claims received after the filing deadline, the Claims Administrator shall notify late-filing claimants that their claims are untimely and that they are not eligible for any monetary award.  The EEOC may reverse the determination that a claim was not timely filed only if the claimant proves that the untimeliness determination is erroneous or there was good cause for the delay.

b.     Claims of Deceased Persons.  Claims may be filed by deceased claimants through representatives of their estate if appropriate documentation (letters testamentary or the

equivalent) is provided. Any claims paid to a deceased claimant shall be made payable to the estate of the deceased claimant.

30.     The Claims Administrator shall forward claim forms and supporting documentation to the EEOC on a rolling basis.

DETERMINATION OF CLAIMS

31.     Within ninety (90) days of the Preliminary Approval of the Consent Decree, EEOC shall make a determination as to whether the Claimants who filed timely claims are eligible to receive a monetary award and, if so, EEOC shall determine the amount of each monetary award.  In making such determinations, EEOC may consider whatever evidence EEOC deems appropriate, including, but not limited to, evidence received by EEOC in its investigation of the charge of discrimination underlying this action, in connection with its litigation of this action, and in connection with the claims process provided by this Decree.   If a claim form is determined to be incomplete by EEOC, EEOC shall request additional information from the Claimant, if it appears that such additional information would complete the Claim Form.  The Claimant must provide the requested information, signed under penalty of perjury, to the EEOC by mail with a postmark no later than fourteen (14) days from the date of the mailed request for information.

32.     YRC may be asked by EEOC to provide information and data that has not already been provided to EEOC that is necessary to make award determinations. EEOC shall make all such requests no later than sixty (60) days after the Preliminary Approval of the Consent Decree.

18

YRC will respond to all EEOC requests for information relating to the Claimants within fourteen (14) days of the receipt of the request, or as soon as practicable, by providing all responsive documents and information available to YRC. The information requested by EEOC of YRC pursuant to this paragraph shall be limited to the Claimants' job duties and titles, work histories, dates of termination, dates of leave and any other information that is reasonably available to YRC relating to the Claimants.

33.     EEOC will determine the amount of each Claimant's monetary award based on the following factors: (i) the severity of the alleged harassment or discrimination, (ii) whether the harassment or discrimination was personally directed at the Claimant, (iii) the duration of the alleged harassment or discrimination, (iv) the extent of the alleged harm, (v) whether the claimant claimed to have been actually or constructively discharged, (vi) the length of service of the employee, (vii) the managerial status of the persons involved, (viii) whether the claimant received more difficult work assignments because of race, (ix) whether the claimant received shorter breaks because of race, (x) whether the claimant received harsher or more frequent discipline because of race, (xi) whether the claimant complained of discrimination, and (x) the claimant's participation and cooperation with the EEOC's litigation in any of these cases. EEOC shall be the sole determiner of the amount of monetary relief to be received by any eligible Claimant under this Decree. YRC will not participate in or object to EEOC's determinations.

<u>MOTION FOR APPROVAL OF ALLOCATION OF SETTLEMENT FUNDS AND
FINAL APPROVAL OF THE CONSENT DECREE.</u>

34.     Upon the determination of all claims, EEOC shall file a motion with the District Court seeking approval of the allocation of the EEOC Settlement Fund among those eligible Claimants who have executed and timely returned the Release and Final Approval of this Consent Decree.   In connection with this motion, EEOC shall file a proposed settlement distribution list, which shall contain the name and proposed gross settlement amount for each eligible Claimant.   YRC shall not challenge the proposed settlement distribution list.   After appropriate review, in connection with which EEOC shall provide any information within EEOC's possession which the Court requests, the Court will enter an Order Approving the Allocation of the Settlement Funds and the distribution thereof pursuant to this Consent Decree and an Order for Final Approval of the Consent Decree.

NOTIFICATION OF AWARDS.

35.     Within seven (7) days of the Order Approving the Allocation of the EEOC Settlement Funds, EEOC shall cause the Claims Administrator to notify each Claimant (both Eligible Claimants as well as those not receiving a monetary award) via U.S. First Class Mail of the amount of his/her monetary award, if any.

36.     Along with the Notification of Award, the Claims Administrator shall mail to each eligible Claimant a Release (a copy of which is attached hereto as Exhibit A).  Each eligible Claimant will be notified that in order to receive monetary payments under this Decree, he/she must execute and deliver to the Claims Administrator a Release, which will become effective upon the Claimant's receipt of his or her distribution.   The letter will inform each eligible

20

Claimant that such Release must be signed and mailed to the Claims Administrator so that it is actually received by the Claims Administrator within forty-five (45) days of the mailing of the Notification of Award. Any eligible Claimant whose executed Release is not actually received by the Claims Administrator within forty-five (45) days of the mailing of the Notification Award shall be ineligible for and forever barred from receiving any relief under this Decree. The Claims Administrator shall promptly provide all original signed Releases to YRC.

## DISTRIBUTION OF SETTLEMENT FUND.

37.     Within seven (7) days of the receipt of an executed Release from an eligible Claimant, the Claims Administrator shall issue and mail a check to the eligible Claimant in the amount reflected in the final settlement distribution list. For each payment, the Claims Administrator will issue an IRS form 1099 to each claimant reflecting the amount paid to that individual. Payments shall represent compensation for non-pecuniary damages and shall not be subject to any payroll deductions. As directed by the EEOC, the Claims Administrator shall take further steps in a timely manner to reach those Claimants who did not receive and/or deposit their settlement checks.

## SURPLUS FUNDS FROM CONSENT DECREE

38.     In the event that any portion of the EEOC Settlement Fund, including accrued interest, has not been distributed as required by this Consent Decree after a period of one hundred twenty (120) days has elapsed from the date on which the settlement checks were mailed by the Claims Administrator, then such remaining amounts from the EEOC Settlement

Fund shall be provided to the Aurora/Quad County Chapter of the Urban League, a non-profit organization jointly identified by the EEOC and YRC that serves the area of the YRC's Chicago breakbulk dock operation to further the job training and hiring of minority workers.

## SPECIFIC INJUNCTIVE PROVISIONS

## CONSENT DECREE MONITOR

39.　　Upon Final Approval of this Consent Decree by the Court, Preston Pugh of Pugh, Jones, Johnson & Quandt, P.C. shall be appointed as the Monitor to oversee the implementation by YRC of the terms of this Decree. For the term of this Consent Decree, the Monitor will have authority under Court supervision to assess and monitor YRC's compliance with the terms of this Decree at YRC's Chicago break bulk dock operation and to report to the EEOC, YRC, and to the Court regarding YRC's compliance.

40.　　In the event that Preston Pugh cannot serve as Monitor for the full term of the Decree, EEOC shall propose a replacement Monitor, subject to YRC's approval. YRC's approval shall not be unreasonably withheld. If the EEOC and YRC agree on a replacement Monitor, they shall file a joint motion for an order from the Court appointing the replacement Monitor. If the parties are unable to agree on a replacement Monitor, the Court shall resolve the issue.

41. The scope of duties of the Monitor described in this Consent Decree pertains only to dockworkers, switchers (also known as spotters or hostlers), janitors, and clericals supporting the management of dock operations at YRC's Chicago break bulk dock operation. The programs and procedures at YRC's Chicago break bulk operation subject to oversight by the Monitor shall include the efficacy of YRC's complaint procedures; the quality of investigations undertaken in response to complaints; the status of all required training; implementation of changes in anti-harassment and anti-discrimination policies; fairness in work assignments; fairness in disciplinary practices; fairness in breaks and downtime; fairness in training and qualification for the spotter position including, but not limited to, fair administration and scoring of the spotter qualifying exam; fairness in movement from casual to permanent status; and with regard to all employees working on the dock, including supervisory employees, the overall environment with regard to race harassment and/or race discrimination.

42. YRC shall fully cooperate with the Monitor in connection with his/her efforts to oversee and monitor the implementation of the terms of the Decree. The Monitor shall have reasonable and timely access to all employees and to relevant books, data (including databases), documents, and other sources of information necessary or appropriate to the exercise of his/her duties described herein. Except as provided in Paragraph 49 and communications with the EEOC and Intervening-Plaintiffs' counsel, the Monitor will maintain as confidential all YRC employee information and other Company information obtained through his or her duties under this Consent Decree. The Monitor, as he/she deems necessary and appropriate, with reasonable

notice to YRC, shall have access to YRC's Chicago break bulk dock operation.

43.     YRC shall compensate the Monitor at his/her reasonable and customary hourly rate, or upon other terms agreed upon by YRC and the Monitor. YRC shall pay reasonable costs and expenses incurred or caused to be incurred by the Monitor in connection with the performance of his/her duties under this Consent Decree. YRC shall promptly, and within a period not to exceed thirty (30) calendar days, pay all reasonable fees and reasonable costs and expenses of the type contemplated by this paragraph which have been certified in writing by the Monitor to YRC to have been incurred by the Monitor in connection with the performance of the Monitor's duties under this Consent Decree. In the event that YRC believes that the fees or expenses incurred by the Monitor are not reasonable, or that the fees or expenses relate to work beyond the scope of the Monitor's duties under the Consent Decree, YRC may invoke the dispute resolution procedure in Paragraph 85 and seek the Court's assistance if necessary to void payment of such fees or expenses. YRC shall indemnify, defend, and hold harmless the Monitor with respect to liability for any reasonable costs and expenses and for claims made against the Monitor or his/her agents by anyone arising out of or related to his/her duties or alleged failure of his/her duties herein and to the same extent and degree as the indemnification YRC provides to its officers and directors for claims or actions against them arising out of or relating to their duties.

24

44.     The Monitor shall have the responsibility for monitoring the investigation of all complaints of discrimination based on race at YRC's Chicago break bulk dock operation and all complaints of retaliation based on opposition to such discrimination or retaliation for involvement or participation in the implementation or enforcement of the terms of this Decree including without limitation the investigation of complaints of incidents of race harassment or race discrimination at YRC's Chicago break bulk dock operation.

45.     For the duration of the Decree, YRC shall notify the Monitor of all complaints of discrimination reported at YRC's Chicago break bulk dock operation within five (5) business days of receipt of the complaint, and with respect to complaints of retaliation, YRC shall notify the Monitor as soon as practicable and, in any event, no later than the close of the next business day after YRC receives any complaint of retaliation.

46.     Upon completion of its investigation of complaints of discrimination or retaliation at YRC's Chicago break bulk dock operation, YRC shall promptly prepare and provide the Monitor with a copy of a written report summarizing the investigation undertaken and any remedial actions taken or proposed by YRC, and shall also promptly communicate to the complaining party the results of the investigation, the remedial actions taken or proposed, if any, and the Monitor's name, address, and telephone number.

25

47.     The Monitor will review YRC's investigation and, where appropriate, may make recommendations to YRC regarding the investigation and resolution of complaints. The Monitor may interview the complaining party and other persons of interest with respect to any complaints, if the Monitor deems it appropriate.

48.     If, upon reviewing information regarding a complaint of race discrimination or retaliation at YRC's Chicago break bulk dock operation or upon his own initiative, the Monitor believes that the remedial action proposed by YRC is inconsistent with YRC's anti-discrimination policy or the terms of this Decree, the Monitor shall first attempt to resolve the disagreement with YRC. If YRC and the Monitor are unable to reach a resolution of their disagreement to the satisfaction of the Monitor, the Monitor shall report to EEOC any such inconsistency and EEOC may pursue the matter with the Court.

49.     Eight (8) months after Final Approval of the Consent Decree and each year thereafter under this Decree, the Monitor shall submit a written report regarding the Company's compliance with the Decree to YRC and the EEOC and file a copy of the report publicly with the Court with the exception that the names and identifying information of any complainants or witnesses shall be redacted. The EEOC may seek to remedy any issues in compliance outlined in the Monitor's report through the dispute resolution procedure set forth in Paragraph 85 of this decree.

50.     The report of the Monitor shall include the following:

        a.      an assessment of whether YRC has successfully complied with each specific non-monetary term of this Decree;

        b.      for each specific term of this Decree that has not been fully complied with, a statement discussing the reasons for YRC's failure to implement the required changes;

        c.      a discussion of barriers perceived by the Monitor, if any, to YRC's compliance with the Decree;

        d.      a description of the Monitor's recommendations to YRC to effectuate the purposes of this Decree and YRC's response to those recommendations;

        e.      recommendations for any changes to existing practices, policies, or programs or any additional polices, practices or programs that the Monitor deems necessary or appropriate for effectuating the purposes of the Decree;

        f.      a summary report of the number and nature of the complaints of race discrimination or harassment received, the nature of any investigations done, and the result;

        g.      report on the assignment of work and the issuance of discipline by race at YRC's Chicago break bulk dock operation;

        h.      report on whether any facilities other than the Chicago Heights facility at 2000 East Lincoln Highway, Chicago Heights, IL 60411 now fall within the Decree's definition of YRC's Chicago break bulk dock operation and whether any such other facility is in compliance with the Decree; and

       i.     report on any other matter falling within the scope of the Monitor's authority.

51.    The above-referenced report or other information in possession of the Monitor, and any testimony sought from the Monitor, shall be used solely for the purposes of this Consent Decree.

## ANTI-HARASSMENT AND ANTI-DISCRIMINATION POLICY

52.    Within thirty (30) days of the Final Approval of the Decree, YRC will provide to the EEOC YRC's equal employment opportunity policies and procedures, including its anti-discrimination policies, its anti-harassment policies, and its policy for investigating complaints in effect at YRC's Chicago breakbulk dock operation.

53.    YRC shall maintain a policy against race discrimination and harassment, which shall remain in effect for the duration of this Decree. YRC's policy against race discrimination and harassment shall, at a minimum:

(a) specifically prohibit all discrimination against employees on the basis of race.

(b) inform employees that they may raise complaints with supervisors, managers, or Human Resources representatives located on site, in addition to the other avenues currently stated in YRC's non-discrimination policy, including the EthicsPoint toll-free hotline or a similar provider, EthicsPoint internet website or a similar provider, or direct correspondence with YRC's Office of General Counsel.

(c) inform employees that complaints of discrimination will be investigated thoroughly

28

and promptly and shall provide that employees who violate the policy are subject to discipline up to and including discharge.

(d) designate the full-time Human Resources Coordinator at YRC's Chicago break bulk dock operation, with responsibility for promptly investigating complaints of discrimination and harassment and for implementing the terms of this Consent Decree.

(e) require that all supervisors and managers who receive performance reviews, will be evaluated, among other criteria, based upon their compliance with YRC's anti-harassment and anti-discrimination policies.

54.     Commencing no later than sixty (60) calendar days after the Final Approval of the Consent Decree, YRC shall distribute a copy of its anti-discrimination and anti-harassment policy, to each employee at YRC's Chicago break bulk dock operation.

55.     YRC shall develop and maintain a policy regarding internal investigation of all complaints concerning alleged race harassment, retaliation and/or discrimination. YRC's policy shall, at a minimum, require that:

a)     YRC make all reasonable efforts to fully investigate all complaints of racial harassment, retaliation, and/or discrimination at YRC's Chicago break bulk dock operation within ten (10) business days of the date the allegation is brought to the attention of a supervisor, manager, or Human Resources department employee.

b)     to the extent reasonable, all interviews be conducted in person.

c)     to the extent reasonable, all material witnesses to be interviewed.

29

d)      to the extent reasonable, the Company photograph and preserve all evidence of racially offensive images or expressions in a manner that will facilitate further forensic investigation.

e)      YRC will prepare written findings of the results of each investigation.

f)      the findings and any remedial actions taken will be communicated to the alleged victim of discrimination by Human Resources, orally or in writing.

g)      all results of harassment or discrimination investigations are sent to the responsible Human Resources manager.

## RACE HARASSMENT / DISCRIMINATION TRAINING

56.      Within ninety (90) days following the Final Approval of this Decree, and each year thereafter under this Decree, all of YRC's employees at YRC's Chicago break bulk dock operation including all YRC Chicago breakbulk dock operation employees who oversee any aspect of Human Resources at YRC's Chicago break bulk dock operation shall participate in a race harassment/discrimination training session or sessions regarding race discrimination and the duty to protect employees from unwelcome harassment.

57.      The first training session, held within ninety (90) days following Final Approval of this Decree, shall be completed at YRC's expense by an outside trainer approved by the EEOC.  Subsequent training sessions may be conducted by internal YRC Human Resources trainers, provided that the trainers complete a train-the-trainer program with a certified trainer and any trainer and presentation materials are approved by the EEOC at least thirty (30) days

30

prior to the training program as set forth in Paragraph 58 below. Any person who is hired to work at or transfers to YRC's Chicago Heights facility or who will oversee any aspect of operations or human resources at YRC's Chicago break bulk dock operation shall view a videotaped version of such training during new employee orientation, within ten (10) business days of starting work. A registry of attendance shall be maintained.

58. YRC shall obtain approval from the EEOC of its proposed trainer prior to the commencement of the training session(s). YRC shall submit the name, address, telephone number, resume and training proposal of the proposed external or internal trainer, as applicable, to the EEOC at least thirty (30) business days prior to the proposed commencement date(s) of the training(s). The EEOC shall have ten (10) business days from the date of receipt of the information described above to accept or reject the proposed trainer. In the event the EEOC does not approve YRC's designated trainer, YRC shall have ten (10) business days to identify an alternate trainer. The EEOC shall have ten (10) business days from the date of receipt of the information described above to accept or reject the alternate trainer. If the parties cannot through this process agree on a trainer, then they may seek the Court's assistance under the dispute resolution procedure in Paragraph 85.

59. YRC shall certify to the Monitor, in writing, within five (5) business days after the ninetieth (90th) day following the Final Approval of this Decree, and again each year thereafter under this Decree, that group training has taken place and that the required personnel have attended. Such certification(s) shall include: (i) the date, location and duration of the

training; and (ii) a copy of the registry of attendance, which shall include the name and position

of each person in attendance. Prior to each anniversary date following the Final Approval of this

Consent Decree, YRC shall certify in writing to the Monitor that all new employees have been

provided the required training during new employee orientation, within ten (10) business days of

starting work.

       60.     Upon the request of the EEOC and/or the Monitor, YRC shall provide them with

copies of any and all pamphlets, brochures, outlines or other written material(s) provided to the

participants of the training session(s).

WORK ASSIGNMENT POLICY

       61.     Within thirty (30) days from the Final Approval of this Decree, YRC will engage

a Work Assignment Consultant, mutually agreed upon by the parties, to assist it in reviewing and

revising the company's work assignment policies and practices at YRC's Chicago Heights

facility. Prior to the commencement of work by the Work Assignment Consultant, the EEOC,

Intervening-Plaintiffs' counsel, and YRC shall meet with the Work Assignment Consultant to

discuss the scope of work pursuant to this provision. The Work Assignment Consultant shall

provide a budget to YRC and the EEOC for approval before commencing work. If the parties

are unable to agree upon a budget, they will first confer on the issue, and agree to use the dispute

resolution procedure in Paragraph 85 only if necessary.

       62.     Within ninety (90) days from the Final Approval of this Decree, the Work

Assignment Consultant will complete its review of YRC's work assignment policies and

32

practices and issue a report (the "Work Assignment Consultant's Report") containing reasonable

recommendations as to the methods by which YRC can modify its current procedures or adopt

new procedures designed to ensure that the procedures are fair and do not have the intent or

effect of discriminating against any employee on the basis of race. The Work Assignment

Consultant shall provide copies of the report to the Monitor, the EEOC, and YRC.

63.     Within sixty (60) days of receiving the Work Assignment Consultant's Report,

YRC shall implement the Work Assignment Consultant's reasonable recommendations at its

YRC's Chicago break bulk dock operation, unless the recommendation would require a material

change to the CBA, would impose a substantial hardship, or YRC otherwise determines that it is

unable to implement a recommendation for good cause, provided however, YRC must provide

an alternative recommendation that is consistent with the goals or objectives of the

recommendations of the Work Assignment Consultant.

64.     If YRC believes a recommendation requires a material change to the CBA, YRC

will provide notice to the EEOC, the Monitor, and the union within fifteen (15) business days of

receiving the report and seek to bargain in good faith necessary modifications of the CBA to

implement the proposed provisions as soon as reasonably possible. If YRC is unable to bargain

with the union or obtain the necessary modification(s) within sixty (60) days of receiving the

Work Assignment Consultant's report, YRC shall report such to the EEOC and the Monitor and

explain the reason for the delay or the circumstances surrounding the parties' inability to bargain

for the modification. If the EEOC believes that there has been unreasonable delay in bargaining

or if either party to negotiations has unreasonably withheld agreement, the EEOC may seek the court's assistance pursuant to dispute resolution procedure in Paragraph 85.

65.    If YRC elects not to implement any of the Work Assignment Consultant's recommendations, it shall explain in writing the basis for its decision not to implement the specific recommendation. Such written explanation will be distributed to the EEOC and the Monitor. If the EEOC does not agree with YRC's decision not to implement a recommendation contained in the Work Assignment Consultant's Report or does not agree with YRC's alternative recommendation, the EEOC and the Monitor, and YRC shall meet and confer in an attempt to work out any disagreements. The Work Assignment Consultant may be included, at any party's request, in the meet and confer discussions. If no agreement is reached, the parties may seek relief from the Court pursuant to the dispute resolution procedure set forth in Paragraph 85.

66.    The above-referenced report or other information in possession of the Work Assignment Consultant, and any testimony sought from the Work Assignment Consultant, shall be used solely for the purposes of this Consent Decree.

DISCIPLINARY PRACTICES

67.    Within thirty (30) days from the Final Approval of this Decree, YRC will engage a Disciplinary Practice Consultant, mutually agreed upon by the Parties, to assist it in reviewing and revising YRC's disciplinary policies and practices at YRC's Chicago break bulk dock operation. Prior to the commencement of work by the Disciplinary Practice Consultant, the EEOC, Intervening-Plaintiffs' counsel, and YRC shall meet with the Disciplinary Practice

34

Consultant to discuss the scope of work pursuant to this provision. The Disciplinary Practice Consultant shall provide a budget to YRC and the EEOC for approval before commencing work. If the parties are unable to agree upon a budget, they will first confer on the issue, and agree to use the dispute resolution procedure in Paragraph 85 only if necessary.

68. Within ninety (90) days from the Final Approval of this Decree, the Disciplinary Practice Consultant will complete its review of YRC's disciplinary policies and practices and issue a report (the "Disciplinary Practice Report") containing reasonable recommendations as to the methods by which YRC can modify its current procedures or adopt new procedures designed to ensure that the disciplinary procedures are fair and do not have the intent or effect of discriminating against any employee on the basis of race. The Disciplinary Practice Consultant shall provide copies of the Report to the Monitor, the EEOC and YRC.

69. Within sixty (60) days of receiving the Disciplinary Practice Report, YRC shall implement the Disciplinary Practice Consultant's reasonable recommendations at its YRC's Chicago break bulk dock operation, unless said recommendations would require a material change in the CBA, would impose a substantial hardship, or YRC otherwise determines that it is unable to implement a recommendation for good cause, provided however, YRC must provide an alternative recommendation that is consistent with the goals or objectives of the recommendations of the Disciplinary Practice Consultant.

70. If YRC believes a recommendation requires a material change to the CBA, YRC will provide notice to the EEOC, the Monitor, and the union within fifteen (15) business days of

35

receiving the report and seek to bargain in good faith necessary modifications of the CBA to implement the proposed provisions as soon as reasonably possible. If YRC is unable to bargain with the union or obtain the necessary modification(s) within sixty (60) days of receiving the Disciplinary Practice Consultant's report, YRC shall report such to the EEOC and the Monitor and explain the reason for the delay or the circumstances surrounding the parties' inability to bargain for the modification. If the EEOC believes that there has been unreasonable delay in bargaining or if either party to negotiations has unreasonably withheld agreement, the parties may seek the court's assistance pursuant to dispute resolution procedure in Paragraph 85.

71.     If YRC elects not to implement any of the Disciplinary Practice Consultant's recommendations, it shall explain in writing the basis for its decision not to implement the specific recommendation. Such written explanation will be distributed to the EEOC and the Monitor. If the EEOC does not agree with YRC's decision not to implement a recommendation contained in the Disciplinary Practice Consultant's Report, or does not agree with YRC's alternative recommendation, the EEOC, the Monitor, and YRC shall meet and confer in an attempt to work out any disagreements. The Disciplinary Practice Consultant may be included, at any party's request, in the meet and confer discussions. If no agreement is reached, the EEOC may seek relief from the Court pursuant to the dispute resolution procedure set forth in Paragraph 85.

72.     The above-referenced report or other information in possession of the Disciplinary Practice Consultant, and any testimony sought from the Disciplinary Practice

36

Consultant, shall be used solely for the purposes of this Consent Decree.

## SUPERVISOR ACCOUNTABILITY

73.     YRC shall impose discipline up to and including suspension, demotion and

termination upon any supervisor or manager, who: (i) engages in race harassment or

discrimination; (ii) knowingly or recklessly tolerates any such conduct in his or her presence or

among persons under his or her supervision; (iii) fails to report allegations of race harassment or

discrimination to the appropriate YRC personnel; or (iv) retaliates against any person who

complains or participates in any investigation or proceeding concerning any such conduct.  YRC

shall communicate this policy to all supervisors and managers.

## POSTING OF NOTICE

74.     Within ten (10) business days after Final Approval of this Decree, YRC shall post

copies of the Notice attached as Exhibit B to this Decree at its YRC's Chicago break bulk dock

operation on the bulletin boards usually used by YRC for posting governmental notices directed

to employees.   The Notice shall remain posted for the duration of the Decree.  YRC shall take

all reasonable steps to ensure that the posting is not altered, defaced or covered by any other

material.  YRC shall certify to the EEOC in writing within ten (10) business days after Final

37

Approval of the Decree that the Notice has been properly posted. YRC shall permit the Monitor to enter YRC's Chicago breakbulk dock operation premises for purposes of verifying compliance with this Paragraph at any time during normal business hours.

## RECORD KEEPING

75.     During the duration of this Decree, YRC shall maintain and make available for inspection and copying by the EEOC and by the Monitor, records (including names, social security numbers, addresses, and telephone numbers) of each employee at YRC's Chicago breakbulk dock operation who complains of race discrimination, race harassment, or retaliation, the substance of the complaint, all documents pertaining to a resulting investigation, and all records of actions taken as a result of the investigation. In addition, YRC shall keep an electronic database of all discipline issued at its YRC's Chicago break bulk dock operation. This database should include, at a minimum, the name and employee ID number of the employer disciplined, the type of discipline issued, the type of violation, the supervisor who issued the discipline, and the date. In addition, YRC shall also maintain electronic copies of the data collected that will indicate the freight handled by individual dockworkers at YRC's Chicago break bulk dock operation.

76.     YRC shall make all documents or records referred to in Paragraph 75 above, available for inspection and copying within ten (10) business days after EEOC and the Monitor so requests. In addition, YRC shall require personnel within its employ whom the EEOC and/or Monitor requests for purposes of verifying compliance with this Decree to cooperate reasonably

38

and to be interviewed, provided that YRC may have a representative present during interviews of management personnel.

## REPORTING

77.     YRC shall furnish to the Monitor and the EEOC the following written reports semi-annually for the duration of this Decree. The first report shall be due six (6) months after Final Approval of the Consent Decree. The final report shall be due one (1) month prior to the expiration of the Decree. Each such report shall contain (as applicable):

(a)     A summary of all complaints of race discrimination or retaliation received at YRC's Chicago breakbulk dock operation during the six (6) month period preceding the report, including the date the complaint was made, who made it, what was alleged, and what actions YRC took to resolve the matter.

(b)     A summary of the content of the data maintained by YRC showing the assignment of work and discipline by race at YRC's Chicago break bulk dock operation. The summary of work assignment data shall be in a form that, at a minimum includes summary information set forth in Exhibit H, along with the underlying compiled table or database and the underlying data. YRC may provide additional summary and analysis at its discretion. The existence of any such summary and analysis in the summary table does not constitute an admission by either side as to the relevance or significance of that measure of work assignment. If any of the Plaintiffs believe that the work assignment data demonstrate non-compliance with

39

the Decree, the Plaintiffs may invoke the Dispute Resolution provisions in Paragraph 85 at which time YRC will have an opportunity to either persuade the Plaintiffs that work assignments actually are in compliance or to propose to Plaintiffs a method of remediating the problem. If the parties are not able to reach agreement after following the steps set forth in Paragraph 85, the matter will be referred to the Court for resolution.

      (c)    A certification by YRC that the Notice required to be posted in Paragraph 74, above, remained posted during the entire six (6) month period preceding the report.

      (d) A summary of training provided during the six (6) month period preceding the report for workers to be qualified as spotters, including who expressed interest in training, who trained, when they trained, who was newly qualified as a spotter, and who, if anyone, failed the qualifying exam.

      (e) A summary of all movement from casual status to the seniority list, including a list of all casuals employed during the six (6) month period preceding the report, all casuals that were terminated, the reasons any casual was terminated, the identity of all employees moved from casual status to the seniority list, and the date employee status was changed.

## MISCELLANEOUS PROVISIONS

      78.    Counterparts: This Consent Decree may be executed by the Parties in one or more counterparts each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  An executed photocopy shall be deemed an original.

79.     Binding Upon Successors: The terms of this Consent Decree shall be binding upon the present and future directors, officers, managers, agents, successors and assigns of YRC. YRC, and any successor(s) of YRC, shall provide a copy of this Decree to any organization or person who proposes to acquire or merge with YRC, or any successor of YRC, prior to the effectiveness of any such acquisition or merger.  This paragraph shall not be deemed to limit any remedies available in the event of any finding by the Court regarding a violation of this Decree.

80.     Notices: Any notices to be given to the parties under this Consent Decree will be deemed sufficient if mailed by first class mail to:

Counsel for Plaintiffs

The EEOC:  Richard J. Mrizek, Equal Employment Opportunity Commission, 500 West Madison Street, Suite 2000, Chicago, Illinois, 60661.

And:

Named Intervenors Counsel:  Jeffrey L. Taren, Kinoy, Taren & Geraghty, 224 S. Michigan Ave., Suite 300, Chicago, IL 60604.

Counsel for YRC:  Grace E. Speights, Gregory R. Talbot, and Joyce E. Taber of Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue, N.W., Washington, D.C. 20004.

81.     This Consent Decree constitutes the entire agreement between YRC and Plaintiffs hereto with respect to the matters herein, and it supersedes all negotiations, representations, comments, contracts and writings prior to the date of this Consent Decree.

82.     Whenever possible, each provision and term of this Consent Decree shall be interpreted in such a manner as to be valid and enforceable; provided, however, that in the event any provision or term of this Consent Decree should be determined to be or rendered invalid or

unenforceable (by an Act of Congress or otherwise), all other provisions and terms of this

Consent Decree and the application thereof to all persons and circumstances subject thereto shall

remain unaffected to the extent permitted by law.

83.　　YRC and EEOC may jointly agree to modify the Consent Decree with the

approval of the Court with the exception of Paragraphs 12(b), 13(a), 13(b), 13(c), which govern

the payment obligations to Named Intervenors and their counsel and which are subject to

modification only by the agreement of Named Intervenors Counsel and YRC.

84.　　YRC and Plaintiffs' Counsel shall make a good faith effort to defend this Consent

Decree from any legal challenge whether by appeal, collateral attack or objection.

DISPUTE RESOLUTION

85.　　If during the term of this Decree any party to this Decree believes that the other

party has failed to comply with any provision(s) of the Decree, the complaining party shall notify

the other parties of the alleged non-compliance and shall afford the alleged non-complying party

ten (10) business days to remedy the non-compliance or to satisfy the complaining party that the

alleged non-complying party has complied. If the alleged non-complying party has not remedied

the alleged non-compliance or satisfied the complaining party that it has complied within ten

(10) business days, the complaining party may apply to the Court for appropriate relief.

DURATION OF THE DECREE AND RETENTION OF JURISDICTION

86.　　All provisions of this Decree shall be in effect and the Court will retain

jurisdiction of this matter to enforce this Decree for a period of five (5) years immediately

42

following the Final Approval of the Decree, provided however, that after final payment by YRC

pursuant to Paragraph 13, YRC may petition the Monitor for a recommendation that its

obligations under this Consent Decree be terminated based on a pattern of compliance. If the

Monitor issues such a recommendation, YRC may petition the Court for approval of the

Monitor's recommendation.

43

**ENTERED AND APPROVED FOR:**

For the EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, DC 20507


P. DAVID LOPEZ
General Counsel

JAMES LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel


s/John C. Hendrickson
JOHN C. HENDRICKSON
Regional Attorney

s/ Gregory Gochanour
GREGORY GOCHANOUR
Supervisory Trial Attorney

s/ Ethan M. M. Cohen
ETHAN M. M. COHEN
Trial Attorney

U.S. Equal Employment
Opportunity Commission
500 W. Madison, Suite 2000
Chicago, Illinois 60661
(312) 869-8104

For YRC, INC.


s/ Grace E. Speights (by consent)
Grace E. Speights
Joyce E. Taber
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, D.C. 20004
COUNSEL FOR YRC, INC.

44

For Named Intervenors

s/ Jeffrey L. Taren (with Consent)
JEFFREY L. TAREN

Jeffrey L. Taren
Kinoy, Taren & Geraghty P.C.
224 S. Michigan Ave. Suite 300
Chicago, IL 60604
(312) 663-5210

ENTERED:

United States District Court
Magistrate Judge Susan Cox

Date: 6-27-12

45

## EXHIBIT A

## RELEASE AGREEMENT

I,_____, for and in consideration of the sum of $ _____ payable to me
pursuant to the terms of the Consent Decree entered by the Court in EEOC v. YRC, No. 06  C
4805 (N.D. Ill.) and EEOC v. YRC, No. 08 C 5555 (N.D. Ill.) on behalf of myself, my heirs,
assigns, executors, and agents, do hereby forever release, waive, remise, acquit, and discharge
YRC, Inc., and Roadway Express, Inc., and their directors, officers, managers, agents,
employees, attorneys, insurers, and for each of the foregoing, their respective parents,
affiliates, subsidiaries, successors and assigns (collectively, the Releasees), from any and all
claims and causes of action of any kind, known or unknown, which I now have or ever have had
under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., arising
from or related to the underlying facts and claims which were asserted in EEOC and Bandy et al
v. YRC, No. 06  C 4805 (N.D. Ill.) and EEOC v. YRC, No. 08 C 5555 (N.D. Ill.).

I understand that by executing this Agreement, the Releasees are not admitting any
violation of my rights under statutory or common law.  I also understand that this release is
effective only so long as each of the payments due and owing under the Decree is paid to me.
Should any payment fail to be made, the release is null and void.

This release is not applicable to any claim that has been raised or could be raised in
EEOC v. Yellow Transp., 09 C 7693 (N.D. Ill.) or Brown et al v. Yellow Transp., 08 C 5908
(N.D. Ill.) regarding conduct or events occurring at YRC's former Chicago Ridge Facility.

_____                    _____
Date                                       Signature

46

## EXHIBIT B
## NOTICE TO YRC EMPLOYEES

This Notice is being posted pursuant to a Consent Decree entered by the federal court in the Northern District of Illinois in EEOC v. YRC, No. 06 C 4805 (N.D. Ill.), EEOC v. YRC, No. 08 C 5555 (N.D. Ill.), resolving litigation filed by the Equal Employment Opportunity Commission ("EEOC") against YRC.

In its suit, the EEOC alleged that YRC discriminated against African-American dockworkers, switchers and janitors at YRC's Chicago Heights and Elk Grove Village facilities on the basis of their race by subjecting them to a hostile work environment and discriminating against them in the terms and conditions of employment including by subjecting them to unequal discipline and unequal work assignments. The resolution by YRC of any and all claims or potential claims set forth under the Consent Decree is not an admission of liability on the part of the Company.

To resolve the case, YRC and the EEOC have entered into a Consent Decree which provides, among other things, monetary relief to eligible individuals, programmatic relief to include updated policies and training regarding laws prohibiting discrimination and harassment based on race, and a Consent Decree Monitor who has been appointed by the Court to monitor YRC's compliance with the Consent Decree. YRC will not discriminate against any employee on the basis of race or retaliate against any person because (s)he opposed any practice made unlawful by the Title VII, filed a charge of discrimination, participated in any Title VII proceeding, or asserted any rights under the Consent Decree.

If you believe you have been discriminated against, you should contact the Chicago Heights Human Resources Coordinator (currently, Kendall Calhoun), any manager or supervisor, or file a report on EthicsPoint at 1-866-ETHICSP or www.ethicspoint.com immediately. The Company cannot respond to issues that are not brought to its attention.

If you believe that you have suffered discrimination at YRC, you may contact Preston Pugh (312-768-7800), who serves as the Consent Decree monitor to ensure that YRC is in compliance with the terms of the Consent Decree, which includes a prohibition on race discrimination and retaliation. You may also contact the EEOC at (312) 353-8195. The EEOC enforces the federal laws against discrimination in employment on the basis of race, color, religion, national origin, sex, age or disability. The EEOC charges no fees and has a TTD number.

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE**
**This Notice must remain posted for the duration of this Decree and must not be altered, defaced or covered by any other material. Any questions about this Notice or compliance with its terms may be directed to: YRC Settlement, EEOC, 500 West Madison Street, Suite 2000, Chicago, IL 60661.**

_____                    _____
Date                               Magistrate Judge Susan Cox
                                   United States District Court

**EXHIBIT C**

**GUARANTY**

The undersigned, Federal Insurance Company, an Indiana corporation ("Guarantor"), in consideration of the settlement of the claims alleged by the U.S. Equal Employment Opportunity Commission (the "EEOC") and by William Bandy, Nerville Cox, Toby Lee, Antawon L. Marshal, Cleophus Marshall, Clarence Royster, Lushawn Smith, Clarence Stokes, Fred Thompson, and Mark Williams ("Named Intervenors") in the matter of *EEOC v. Roadway Express, Inc and YRC,* Case Numbers 06-cv-4805 and 06-cv-5555 *and William Bandy et al. v. YRC, Inc. formerly known as Roadway Express* severed and renumbered 10 CV 5304 (collectively, the "Lawsuit"), for which it has obligations under an insurance agreement relating to the Lawsuit, does hereby unconditionally guarantee YRC, Inc.'s payment of monetary relief (a total of $1,500,000 in three yearly installments of $500,000 each), as detailed in the Consent Decree entered into as part of the Lawsuit (the "Consent Decree"). In no event shall Guarantor's obligations under this Guaranty include any liability to the EEOC or the Named Intervenors for any special, indirect, consequential or punitive damages (including any loss of profits, business or anticipated savings) due to non-payment by Guarantor or YRC, Inc.

Guarantor acknowledges, represents, and warrants that YRC, Inc.'s and Roadway Express, Inc.'s agreement to the Consent Decree with Guarantor's guaranty of payment is in the best interest of Guarantor, and that the EEOC's and Named Intervenors' agreement to the Consent Decree with the guaranty of payment by Guarantor constitutes good and sufficient consideration for such Guaranty by Guarantor.

It is recognized and agreed that this Guaranty is a substantial part of the consideration for the signing of the Consent Decree by the EEOC and the Named Intervenors and that the EEOC and the Named Intervenors would not agree to any deferred payment under the Consent Decree without the agreement of Guarantor to execute this Guaranty.

In the event that YRC, Inc., for any reason whatsoever, including bankruptcy, reorganization, or dissolution, does not pay or cause to be paid any of the installment payments described in Paragraph 13 of Consent Decree, or any part thereof, on the date said payment is scheduled to be made and such non-payment continues for fourteen (14) days (a "Default"), then, within seven (7) days after either the EEOC or the Named Intervenors provides written notice of Default, Guarantor agrees to pay all amounts then due and owing under Paragraph 13 of the Consent Decree, without further act or deed by any person, and without further notice to or order of the Court. Any bankruptcy, reorganization or dissolution of YRC, Inc. or any successor or assign shall have no effect on the obligation of Guarantor to make all payments due and owing under this Guaranty. Nothing herein shall obligate Guarantor to make any payment before such payment would otherwise be due and owing under the Consent Decree.

Guarantor also agrees that the EEOC or the Named Intervenors are not required to first enforce against any other person or entity any liability, obligation or duty guaranteed by this Guaranty before seeking enforcement thereof against Guarantor; Guarantor acknowledges that

this is a guarantee of payment and not a guaranty of collection.

Guarantor acknowledges and agrees that an action may be brought and maintained against Guarantor by the EEOC or the Named Intervenors to enforce any liability, obligation or duty guaranteed by this Guaranty without the necessity of joining Roadway Express, Inc. or YRC, Inc. or any other person or entity in such action. Guarantor agrees to pay all costs and fees reasonably and necessarily incurred by the EEOC or Plaintiff Intervenors in enforcing the Guaranty.

All notice hereunder shall be sent by overnight delivery to Specialty Claims Manager, Chubb & Son, a division of Federal Insurance Company, 15 Mountain View Road, Warren, NJ 07059. Notice shall be deemed provided on the date after notice is deposited with the overnight delivery service.

Guarantor hereby agrees to the jurisdiction of the United States District Court for the Northern District of Illinois under the Consent Decree for the limited purpose of enforcing this Guaranty, or resolving any dispute arising hereunder.

**EXECUTED** to be effective as of this _____ day of _____, 2010.

**GUARANTOR:**


**On behalf of Federal Insurance Company:** By signing this document, I declare under the penalty of perjury that I am authorized by Federal Insurance Company to enter into this Guaranty.


NAME (printed): _____


SIGNATURE: _____


TITLE: _____


ADDRESS: _____

_____

PHONE: _____

## EXHIBIT D

## THIS IS A NOTICE OF A PROPOSED CLASS ACTION SETTLEMENT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| WILLIAM BANDY, TOBY LEE, LUSHAWN SMITH, MARK WILLIAMS CLARENCE STOKES, FRED THOMPSON, CLARENCE ROYSTER, ANTAWON L. MARSHAL, NERVILLE COX and CLEOPHUS MARSHALL, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) 10 CV 5304 |
| v. | ) Magistrate Judge Cox |
| YRC, Inc. formerly known as ROADWAY EXPRESS, INC. | ) ) ) |
| Defendants. | ) ) |

## THIS IS NOT A SUMMONS NOR AN ORDER TO COME TO COURT

This Notice is being sent to you, as ordered by the Court, to advise you of the preliminary approval of the settlement of two employment discrimination cases against the company formerly known as Roadway Express and now known as YRC, Inc. or the "Company" with regard to its terminal in Chicago Heights, Illinois and its former terminal in Elk Grove Village, Illinois. The original case was brought by the Equal Employment Opportunity Commission ("EEOC") for damages and injunctive relief on behalf of a class of dockworkers, switchers, and janitors and is entitled *EEOC v. Roadway Express, Inc. and YRC*, Case Numbers 06-cv-4805 and 06-cv-5555 ("EEOC case"). A class action complaint in intervention was also filed seeking only injunctive relief and punitive damages on behalf of a class of dockworkers and switchers. That case is entitled *William Bandy et al. v. YRC, Inc. formerly known as Roadway Express* and is now renumbered 10-cv-5304. ("Bandy case"). These cases are now consolidated for Settlement Purposes.

**IF YOU ARE A CLASS MEMBER, YOU MUST NOW DECIDE WHAT ACTION YOU WILL TAKE IN RESPONSE TO THE PROPOSED SETTLEMENT OF THE CLASS ACTION.**

If you want to make a claim for money from the settlement, you can only do so in the EEOC case. You must submit a CLAIM FORM (enclosed) postmarked by _____ in order for you to receive money from the settlement.

You may object to the class settlement in *Bandy et al. v. YRC* by submitting a written statement and appearing at a hearing on _____ at 1:30 p.m., at which the Court will consider the fairness, adequacy and reasonableness of the proposed settlement in the *Bandy* case; or

You may decide to be excluded from the *Bandy* case ("opt out") for any reason by _____. If you opt out of the *Bandy* case, then you will not be bound by the release provisions with regard to claims that were asserted in that case. Please note, however, that you will not be allowed to receive any money from the settlement fund in the *EEOC v. Roadway* case without signing a release of your Title VII claims.

All class members in the *Bandy* case and the EEOC case are entitled to seek monetary compensation from the Settlement Fund established in the *EEOC v. Roadway* case. To do so, you must file the enclosed CLAIM FORM by the above stated deadline.

## I. SUMMARY OF LITIGATION

This litigation began in September 2006 when EEOC filed a race discrimination case (Case No. 06 C 4805) on behalf of a class of African-American dockworkers, switchers, and janitors employed by Defendant Roadway Express at its Chicago Heights facility. The EEOC's complaint alleges that Roadway violated Title VII by creating a racially hostile work environment for these African-American workers, and subjecting these African-American workers to racially discriminatory terms and conditions of employment, including discrimination in discipline, breaks, and work assignments. A group of ten class members represented by Kinoy, Taren & Geraghty intervened in that action and also alleged discrimination at the Elk Grove Village facility and added claims under Section 1981 based upon the same operative facts on behalf of a class of Roadway dockworkers and switchers. In their complaint, the ten named class members sought injunctive relief and punitive damages.

In 2008, the EEOC filed an additional complaint (Case No. 08 C 5555) alleging Roadway similarly violated Title VII at its Elk Grove Village facility by creating a racially hostile work environment for its African-American dockworkers, switchers, and janitors and subjected them to the same racially discriminatory terms and conditions of employment.

Between 2006 and the present, the parties to the litigation exchanged almost a million documents and took over 100 depositions. The parties also engaged in private mediation on two occasions and then in a court-supervised mediation process. This process enabled the parties to better understand each other's positions and, ultimately, to reach an agreement to settle the *Bandy* case as well as the consolidated litigation brought by the EEOC.

The proposed settlements would resolve all claims brought against Roadway Express, now known as YRC, Inc., on behalf of the African-American dockworkers and switchers in the *Bandy*

case and the African-American dockworkers, switchers, and janitors in the EEOC case, including claims for both money and equitable relief.

## II. SUMMARY OF THE PROPOSED *BANDY* SETTLEMENT

The provisions of the proposed Consent Decree are summarized below.

## EQUITABLE RELIEF: SUMMARY OF EMPLOYMENT PRACTICES AFFECTED BY THE SETTLEMENT

The settlement, which is contained in a type of court order known as a "Consent Decree," provides for the following equitable measures to ensure fair, nondiscriminatory treatment of all of company members and to prevent discriminatory employment practices adversely affecting African Americans who work at the Chicago Heights terminal of YRC. YRC will agree to be bound by the Consent Decree for up to 5 years. As described below, the Consent Decree will obligate YRC to implement a number of steps that affect the way it handles complaints of discrimination and harassment, the way it disciplines its employees and the manner in which it hands out job assignments to dock workers. The Consent Decree will obligate YRC to undertake various other activities related to equal employment opportunity.

1. **Court Appointed Monitor.** Upon Final Approval of this Consent Decree, the Court will appoint a Monitor to oversee the implementation by YRC of the terms of this Decree. The Monitor will have authority under Court supervision to assess and monitor YRC's compliance with the terms of this Decree and to report to the EEOC, YRC, and to the Court regarding YRC's compliance. The programs and procedures subject to oversight by the Monitor will include the efficacy of YRC's complaint procedures; the quality of investigations undertaken in response to complaints; the status of all required training; implementation of changes in anti-harassment and anti-discrimination policies; fairness in work assignments; fairness in disciplinary practices; fairness in breaks and downtime; and the overall environment with regard to race harassment and/or race discrimination.

2. **Revised EEO Policies.** Within (60) days of Final Approval of the Decree, YRC will distribute equal employment opportunity policies and procedures, including its anti-discrimination policies, its anti-harassment policies, and its policy for investigating complaints, which will meet minimum standards set forth it the Decree.

3. **Race Harassment/Discrimination Training.** Within (90) days of Final Approval of the Decree, YRC will require all of its employees who implement human resources policies at Chicago Heights to undergo new racial harassment training, to be approved by the EEOC.

4. **Nondiscriminatory Work Assignments and Discipline Procedures.** Within thirty (30) days from the Final Approval of this Decree, YRC will engage consultants, approved by the EEOC, to assist it in reviewing and revising the company's work assignment policies and practices and its disciplinary practices at YRC's Chicago Heights facility. The

consultants will make recommendations as to the methods by which YRC can modify its current procedures or adopt new procedures designed to ensure that the procedures are fair and do not have the intent or effect of discriminating against any employee on the basis of race. The recommendations will be implemented unless it would require a material change to the CBA, would impose a substantial hardship, or YRC otherwise determines that it is unable to implement a recommendation for good cause, subject to oversight by the Court.

5. **Supervisor Accountability.** YRC agrees that it will impose discipline up to and including suspension, demotion and termination upon any supervisor or manager who is found to have engaged in race harassment or discrimination.

6. **Maintaining Records and Reports.** YRC will maintain records of all matters related to the implementation of this Consent Decree and will make those records available to the EEOC upon reasonable request. YRC will furnish to the monitor and parties, on a semi-annual basis, a report with regard to compliance with the Consent Decree.

## MONETARY RELIEF IN THE EEOC CASE

All monetary relief, including the payment of attorneys' fees and costs to private counsel, will be provided solely through the procedures set forth in the *EEOC* settlement. In addition to the equitable relief set forth above, YRC, Inc., and its insurance carrier, has agreed to pay $10,000,000.00, for any and all claims for damages. Claimants in the EEOC case will be compensated, in amounts to be determined in its discretion by the EEOC, upon the timely submission and approval of a valid claim form. YRC, Inc. will cause its insurer, Federal Insurance Company, to make the initial payment of $8,500,000.00 of the monetary settlement to be paid five (5) business days after Final Approval. The remaining $1,500,000.00 will be paid into the Settlement Fund by YRC, Inc., in three equal installments over a 36 month period, with the first payment being made 12 months after final court approval of the Consent Decree. YRC, Inc.'s insurer, Federal Insurance Company, has agreed to guarantee payment of these installment amounts in the event YRC, Inc. is for any reason unable to satisfy its obligations.

## ATTORNEYS' FEES TO PRIVATE COUNSEL

The parties have agreed, subject to Court approval, that class counsel's attorneys' fees and out-of-pocket costs, for work done on these cases since 2006, of $1,500,000.00 will be paid out of a separate escrow fund established for intervenors and their counsel in the *EEOC v. YRC* case.

## THE CLAIMS PROCESS

To participate in the monetary settlement, you must comply with the EEOC Claims Process. Documents describing that claims process are included in this packet of materials. NO ADDITIONAL MONEY IS BEING PAID AS PART OF THE *BANDY* SETTLEMENT.

## B. CLASS MEMBERSHIP

If you are African-American, and were employed at the Chicago Heights or Elk Grove Village terminals of Roadway Express, as a dockworker, switcher, or janitor, at any time from March 13, 2002 to the present, then you are a member of the EEOC class.

If you are African-American, and were employed at the Chicago Heights or Elk Grove Village terminals of Roadway Express, as a dockworker or switcher, at any time from April 9, 2003 to the present, then you are a member of the *Bandy* class.

If you choose to opt-out of the *Bandy* settlement and do not file a claim with the EEOC's settlement process, you will not receive any money from the settlement of these two cases and you will not be releasing any claims for monetary damages pursuant to Title VII of the Civil Rights Act or 42 U.S.C. § 1981. However, you may be able to bring your own claims for employment discrimination. If you start your own lawsuit against YRC after you exclude yourself, you will have to represent yourself or hire your own lawyer for that lawsuit and you will have to prove your claims. If you decide to do this, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

**TO RECEIVE ANY MONEY AS PART OF THE SETTLEMENT OF THESE TWO CASES, YOU MUST FILE A CLAIM WITH THE EEOC.**

How do I ask the Court to exclude me from the *Bandy* class? To ask to be excluded, you must send a request for exclusion that contains the following language:

I understand that I am requesting to be excluded from the *Bandy* class settlement. I understand that if I have not filed a timely claim with the EEOC, I will receive no money from the EEOC Settlement Fund. I understand that if I bring a separate legal action seeking damages I may receive nothing or less than what I would have received if I had filed a claim in the EEOC case.

You must mail your request for exclusion postmarked by _____ to the YRC Claims Administrator at_____.

## C. NOTIFICATION OF AWARDS IN THE EEOC SETTLEMENT

After receiving the claim forms, the EEOC will determine the awards, as set forth above, and will cause the Claims Administrator to send notice of the awards to each class member on or about_____.

## D. THE SETTLEMENT PROCESS AND FAIRNESS HEARING

Every class action settlement must be approved by the Court. So far, Magistrate Judge Susan Cox has only preliminarily decided that the process may go forward as proposed. In order to decide whether to give final approval to the settlement, Judge Cox will hold a fairness hearing in open court on_____. You may attend this hearing. If you wish to object to the settlement, you must send to the Claims Administrator a written statement of your objection postmarked by _____ and must also appear at the fairness hearing. IF YOU ARE

SATISFIED WITH THE SETTLEMENT, YOU DO NOT NEED TO APPEAR AT THE FAIRNESS HEARING AND YOU DO NOT NEED TO SUBMIT WRITTEN COMMENTS.

## III. NON-ADMISSION

By entering into this Consent Decree, no party makes any admission regarding any claims or potential clams or any defenses thereto.

## IV. INSPECTION OF THE COURT FILE AND QUESTIONS

The foregoing explanation of this case and the settlement papers are only summaries. Complete copies of all pleadings in this litigation are available for inspection and copying at the Office of the Clerk for the Northern District of Illinois, Eastern Division, 219 S. Dearborn, Chicago, Illinois, during regular business hours. If you have questions relating to the settlement, please contact plaintiffs' counsel, Jeffrey L. Taren, Kinoy, Taren & Geraghty, 224 S. Michigan Ave., Suite 300, Chicago, IL 60604, (312) 663-5210. If you have questions for the Claims Administrator, call them Toll-Free at _____.

OTHER THAN TO OBTAIN INFORMATION ABOUT INSPECTING THE COURT FILE, PLEASE DO NOT CONTACT THE CLERK'S OFFICE FOR INFORMATION ABOUT THE PROPOSED SETTLEMENT. DO NOT WRITE OR CALL THE COURT DIRECTLY.

By Order of the United States District Court
for the Northern District of Illinois

Dated:

/s/
Judge Susan Cox

**EXHIBIT E**

**NAMED INTERVENOR RELEASE AGREEMENT**

I,_____, for and in consideration of the sum of $81,500 payable to me, plus payment of my attorneys' fees pursuant to the terms of the Consent Decree entered by the Court in EEOC v. YRC, No. 06 C 4805 (N.D. Ill.) and EEOC v. YRC, No. 08 C 5555 (N.D. Ill.), on behalf of myself, my heirs, assigns, executors, and agents, do hereby forever release, waive, remise, acquit, and discharge YRC, Inc., and Roadway Express, Inc., and their directors, officers, managers, agents, employees, attorneys, insurers, and for each of the foregoing, their respective parents, affiliates, subsidiaries, successors and assigns (collectively, the Releasees), from any and all claims and causes of action of any kind, known or unknown, including all claims for attorneys' fees and costs, which I now have or ever have had under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. or under 42 U.S.C. § 1981, arising from or related to the underlying facts and claims which were asserted in EEOC and Bandy et al v. YRC, No. 06 C 4805 (N.D. Ill.) and EEOC v. YRC, No. 08 C 5555 (N.D. Ill.).

I understand that by executing this Agreement, the Releasees are not admitting any violation of my rights under statutory or common law. I also understand that this release is effective only so long as each of the payments due and owing under the Consent Decree is paid to the Intervenors' Escrow Account by YRC or its insurer. Should any payment fail to be made, the release is null and void.

This release is not applicable to any claim that has been raised or could be raised in *EEOC v. Yellow Transp.*, 09 C 7693 (N.D. Ill.) or Brown et al v. Yellow Transp. 08 C 5908 (N.D. Ill.) regarding conduct or events occurring at YRC's former Chicago Ridge Facility.


_____
      SIGNATURE


_____
      Date

**EXHIBIT F**

*Re: EEOC v. Roadway Express and YRC, Inc.*

Dear Claimant:

EEOC has reached an agreement to settle the Title VII race harassment and discrimination case brought by the EEOC against Roadway Express and YRC on behalf of a group of African-American dockworkers, switchers, and janitors who worked at the Chicago Heights and Elk Grove Village facilities.

To settle the EEOC case, YRC agreed to a type of court order known as a "Consent Decree," which requires YRC to pay money into a settlement fund for distribution to claimants and requires YRC to take certain actions to prevent discrimination from occurring in the future at its Chicago Heights facility. The Court-approved Consent Decree does the following:

1)    Prohibits YRC from discriminating against employees on the basis of race and from retaliating against any employee who makes a complaint;

2)    Requires that YRC implement a revised anti-discrimination policy and investigation procedure at its Chicago Heights facility;

3)    Requires YRC to provide all employees at the Chicago Heights facility with training approved by the EEOC on the laws and company policies prohibiting discrimination and harassment;

4)    Requires a Court-approved monitor be in place to ensure that YRC's complaint procedure is working and that YRC is complying with the Consent Decree;

5)    Requires YRC to report all complaints of racial harassment or discrimination it receives for employees covered by the Consent Decree to the monitor and the EEOC;

6)    Requires YRC to hire consultants, approved by the EEOC, to assist it in reviewing and revising the Company's work assignment and discipline policies and practices at the Chicago Heights facility. The consultants will make recommendations as to the methods by which YRC can modify its current procedures or adopt new procedures designed to ensure that the procedures are fair and do not have the intent or effect of discriminating against any employee on the basis of race. The recommendations will be implemented unless it would require a material change to the collective bargaining agreement, would impose a substantial hardship, or YRC otherwise determines that it is unable to implement a recommendation for good cause, subject to oversight by the Court; and

7)     Requires YRC to pay a total of $7,685,000.00 into the EEOC settlement fund. An initial payment of $6,532,250.00 has been made into settlement fund. The Consent Decree requires three additional payments of $384,250.00 (for a total of $1,152,750) over the next three years. These payments are secured by a guaranty from YRC's insurer.

**To receive money under this settlement fund, you must submit the attached claim form postmarked by     .**

This letter is accompanied by a claim form and a return envelope. In order for the EEOC to consider whether you are entitled to a share of the monetary relief as part of the settlement of this case, the enclosed form must be completed and postmarked for return to the Claims Administrator by     .

EEOC will determine the amount of each monetary award. In making such determinations, EEOC may consider whatever evidence EEOC deems appropriate, including, but not limited to, evidence received by EEOC in its investigation of the charge of discrimination underlying this action, in connection with its litigation of this action, and in connection with the claims process provided by this Decree.

EEOC will determine the amount of each Claimant's monetary award based on the following factors: (i) the severity of the alleged harassment or discrimination, (ii) whether the harassment or discrimination was personally directed at the Claimant; (iii) the duration of the alleged harassment or discrimination, (iv) the extent of the alleged harm, (v) whether the claimant claimed to have been actually or constructively discharged, (vi) the length of service of the employee, (vii) the managerial status of the persons involved, (viii) whether the claimant received more difficult work assignments because of race, (ix) whether the claimant received shorter breaks because of race, (x) whether the claimant received harsher or more frequent discipline because of race, (xi) whether the claimant complained of discrimination, and (x) the claimant's participation and cooperation with the EEOC's litigation against YRC.

It is critical that you understand that a large number of claimants will share in the settlement fund and there is likely to be a range of awards. It is expected that some claimants will receive awards of as little as $2,000.00. Accordingly, you should not expect to receive a large sum as result of the settlement of this case. The EEOC will keep none of the money and the entire settlement fund will be designated for individuals who have returned claim forms.

Pursuant to the terms of the Consent Decree, payments will be made to eligible claimants in installments over a three-year period. In order to obtain any monetary award, a claimant will be required to execute a release of any race discrimination claim arising under Title VII against Roadway or YRC relating to this case.

If you have questions about how or whether your receipt of any monetary relief pursuant to this settlement may ultimately affect your tax liability you should consult with your own attorney. The EEOC cannot advise you on these topics. Further, if you have filed a bankruptcy proceeding or are considering filling for bankruptcy, you should consult with your personal bankruptcy attorney regarding such matters as EEOC cannot advise you on these topics.

**The only way that you will be considered for a share of monetary relief in this case is by completing a claim form and providing it to the Claims Administrator postmarked by _____, and then subsequently executing a release of claims.** If your claim form is postmarked by the above deadline, the EEOC will review your claim and make a determination as to whether you are an eligible claimant who is entitled to a share of the monetary relief in this case. The EEOC will make a determination regarding the eligibility of all claimants by ___. Claimants will then be informed by letter of the amount of monetary relief (if any) to which each is entitled. Claim Forms received by the EEOC shall be treated as confidential and not disclosed to YRC or any other person or entity, except that such Claim Forms may be submitted confidentially to the Court if requested by the Court.

We look forward to working with you during the claims process.

Sincerely,


Richard J. Mrizek
Ethan M. M. Cohen
Trial Attorneys

**EXHIBIT G**

**CLAIM FORM**

**IMPORTANT: Your Claim Form <u>MUST</u> be returned to the Claims Administrator <u>POSTMARKED</u> by <u>DATE</u>.**

<u>**INSTRUCTIONS**</u>

1.  It is important to read and follow these instructions carefully, as well as those contained in the letter that accompanied this Claim Form. Failure to follow these instructions may result in your losing benefits to which you might otherwise be entitled.

2.  If you do not return this Claim Form postmarked by **DATE**, your claim will be rejected and you will lose all rights to receive any money from this settlement. You must mail your Claim Form to:

    Claims Administrator Address

3.  You **must *sign*,** under penalty of perjury, and **date** the Claim Form on page ___.

4.  Only claims submitted on an original, non-photocopied Claim Form will be accepted. Claims submitted on photocopied Claim Forms will not be accepted.

5.  If you have insufficient space to answer a question, you may continue your answer on additional sheets of paper. Please write your name, social security number, and the appropriate question number on any additional sheets of paper you include.

6.  Answer all questions as fully and completely as you can, even if you have provided the same or similar information to the EEOC in the past. If you are uncertain or cannot fully recall certain information, you may indicate that fact in your answers.

7.  You must fill out this form, even if you have sat for a deposition or if you have been previously interviewed by the EEOC.

8.  Please update us if any of your contact information changes.

**PERSONAL INFORMATION**

1. _____
   Name (First, Middle, Last)

2. _____
   Street Address (including Apartment Number, if applicable)

3. _____
   City                    State                    Zip Code

4. _____     5. _____
   Social Security Number               Race

6. _____
   E-mail address

7. _____     _____
   Home Phone Number                      Best Time to Call This Number

8. _____     _____
   Work Phone Number                      Best Time to Call This Number

9. _____     _____
   Cell Phone Number                      Best Time to Call This Number

10. _____
    Phone Number of Relative or Other Person Who Knows How to Contact You

11. _____
    Date of Birth

12. Please list any other name you used while employed at Roadway:

    _____     _____
    Name                                    Dates You Used This Name

    _____     _____
    Name                                    Dates You Used This Name

**EMPLOYMENT WITH ROADWAY**

13. Job titles you worked under while at Roadway (for example "dockworker" "switcher"):
    _____

14. Brief description of job duties for each position:_____

61

15.     Dates of employment at Roadway: _____

16.     List any extended periods (more than 2 weeks) you were on lay off: _____

---

## CLAIMS OF RACIAL HARASSMENT

17.     Did you ever personally <u>see</u> **racist** graffiti at Roadway's facilities in either Chicago
Heights or Elk Grove Village, IL? Yes _____ No _____
If "yes", describe what you saw, when you saw it, where in the facility you saw it, and how often
you saw it:

_____

_____

_____

_____

_____

_____

_____

18. Did you ever <u>hear about</u> any **racist** graffiti at Roadway's facilities in either Chicago Heights or Elk Grove Village, IL? Yes _____ No _____
If "yes", describe what you heard and when you heard about it: _____

_____

_____

_____

19. Did you ever personally see or hear about any **racist** drawings or cartoons at Roadway's facilities in either Chicago Heights or Elk Grove Village, IL? Yes _____ No _____
If "yes", describe the drawings or cartoons, whether you personally saw them, whether you heard about them, when they occurred, and where they were located: _____

_____

_____

_____

_____

20. Did you ever personally <u>see</u> a noose or rope you believed to be a noose at Roadway's facilities in either Chicago Heights or Elk Grove Village, IL that you believe was displayed to either intimidate or offend Black employees? Yes _____ No _____
If "yes", describe what you saw, when you saw it, where in the facility you saw it, and on how many occasions. If you saw such a noose or slip knot more than once describe each occurrence. _

_____

_____

_____

_____

_____

_____

21. Did you ever <u>hear about</u> a noose or rope you believed to be a noose at Roadway's facilities in either Chicago Heights or Elk Grove Village, IL that you believe was displayed to either intimidate or offend Black employees? Yes _____ No _____
If "yes", describe what you heard, when you heard about it, where in the facility you were told it was displayed; if you heard about such a noose or slip knot more than once, describe each

occurrence:

_____

_____

_____

_____

_____

_____

22.     Have you ever personally heard anyone at Roadway's facilities in either Chicago Heights
or Elk Grove Village, IL, either a coworker or supervisor, make any kind of **racist** remark?
Yes _____ No _____
If "yes", describe what you heard, who said it, whether it was a supervisor or coworker, whether
it was directed at you or overheard by you, and when you heard it, on how many occasions, and
whether you reported it to the Company, to whom, and the Company's response.  Please ; if you
heard more than one racist remark, describe each occurrence: _____

_____

_____

_____

23.     Did any Roadway employee at Chicago Heights or Elk Grove Village, IL, whether a
supervisor or coworker, ever refuse to work with you because of your race? Yes _____ No _____
If "yes", please provide details of the incident, including who refused to work with you and when
the incident occurred; if this occurred more than once, describe each occurrence:

_____

_____

_____

_____

**CLAIMS OF RACIAL DISCRIMINATION**

24.     At Roadway's facilities in Chicago Heights or Elk Grove Village, did you ever observe
any differences in the way Black and White employees were treated in regard to discipline?
Yes _____ No _____
If "yes", please describe:

_____

_____

_____

_____

_____

_____

_____

_____

25.     Do you believe that you ever received discipline for conduct for which a White employee was not, or would not have been, disciplined?  Yes _____ No _____
If "yes", please describe this incident:

_____

_____

_____

_____

_____

_____

26.     At Roadway's facilities in Chicago Heights or Elk Grove Village, did you observe any differences between Black and White employees regarding access to and privileges of using the break room and restrooms?  Yes _____ No _____
If "yes", please describe what you observed:

_____

_____

_____

_____

_____

_____

27.    At Roadway's facilities in Chicago Heights or Elk Grove Village, did you observe any differences between how Black and White employees were treated by Roadway regarding behavior on the dock such as talking, smoking, use of cell phones, etc.?
Yes _____ No _____
If "yes", please describe what you observed:

_____

_____

_____

_____

_____

28.    At Roadway's facilities in Chicago Heights or Elk Grove Village, did you ever observe any differences between the type or amount of work assigned to Black and White employees?
Yes _____ No _____
If "yes", please describe what you observed, including whether these differences changed over time:

_____

_____

_____

_____

_____

29.    Do you believe that you ever received a less desirable type work assignment because of your race? Yes _____ No _____
If "yes", please describe:

_____

_____

_____

_____

_____

## COMPLAINTS

30.    Did you ever complain in writing to Roadway about any racial harassment or discrimination that you experienced, witnessed, or heard about at either the Chicago Heights or Elk Grove Village facilities? Yes _____ No _____
If "yes", please state what you complained about, to whom you complained and when, also describe any response you received from Roadway:

_____

_____

_____

_____

_____

_____

31.    Did you ever make a verbal complaint to any supervisors, managers, or human resources personnel at Roadway about any racial harassment or discrimination that you experienced, witnessed, or heard about at either the Chicago Heights or Elk Grove Village facilities? Yes _____ No _____
If "yes", please state what you complained about, to whom you complained and when, also describe any response you received from Roadway.:

_____

_____

_____

_____

_____

_____

32.    Did you ever file a Charge of Discrimination regarding Roadway's Chicago Heights or Elk Grove Village facilities with the EEOC, the Illinois Department of Human Rights, or any other local government fair employment agency? Yes _____ No _____
If "yes", please state with what agency you filed your Charge, the Charge number of your complaint, whether your case went to court (and if so, the name of the court where you filed and your case number) and any relief you received as a result of your Charge:

_____

_____

_____

_____

_____

**EFFECT OF THE DISCRIMINATION**

33.     Describe how the claims of racial harassment or discrimination described above affected you or made you feel (including any emotional pain or suffering).

_____

_____

_____

**PARTICIPATION IN THIS LITIGATION**

34.     Describe any effort that you made to participate in this litigation including time spent looking for documents, or communicating with the EEOC.

_____

_____

I _____ declare under penalty of perjury that all of the information
        (Print Name)

on this Claim Form is true and correct.


_____          _____
Signature of Claimant                          Date

Your Claim Form must be postmarked on or before _____. A self-addressed envelope
has been enclosed for returning the Claim Form. A Claim Form postmarked later than
_____ will not be accepted. The Claim Form must be mailed to:

              Claims Administrator Address

## EXHIBIT H

### Work Assignment Summary Report

## YRC  Compliance Reporting Table:  Supervisor Differences

| Supervisor Name | Supervisor Race | Black Employees | | | | White Employees | | | | Mean Differences | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | N Bills | Average Weight | Average Pieces | Average Standard Work | N Bills | Average Weight | Average Pieces | Average Standard Work | Average Weight | Average Pieces | Average Standard Work |
| 1 | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | |
| etc | | | | | | | | | | | | |

YRC Compliance Reporting Table:  Overall Results

|  | Black | | | White | | | |
|---|---|---|---|---|---|---|---|
|  | N | Mean | SD | N | Mean | SD | t-Statistic |
| Overall |  |  |  |  |  |  |  |
| Average Weight per Bill |  |  |  |  |  |  |  |
| Average Pieces per Bill |  |  |  |  |  |  |  |
| Average Standard Work per Bill |  |  |  |  |  |  |  |
| Average Number of Bills per Trailer |  |  |  |  |  |  |  |
| Average Number of Bills per Hour |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Stripping Only |  |  |  |  |  |  |  |
| Average Weight per Bill |  |  |  |  |  |  |  |
| Average Pieces per Bill |  |  |  |  |  |  |  |
| Average Standard Work per Bill |  |  |  |  |  |  |  |
| Average Number of Bills per Trailer |  |  |  |  |  |  |  |
| Average Number of Bills per Hour |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Stacking Only |  |  |  |  |  |  |  |
| Average Weight per Bill |  |  |  |  |  |  |  |
| Average Pieces per Bill |  |  |  |  |  |  |  |
| Average Standard Work per Bill |  |  |  |  |  |  |  |
| Average Number of Bills per Trailer |  |  |  |  |  |  |  |
| Average Number of Bills per Hour |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Hand-Moved Loads Only |  |  |  |  |  |  |  |
| Average Weight per Bill |  |  |  |  |  |  |  |
| Average Pieces per Bill |  |  |  |  |  |  |  |
| Average Standard Work per Bill |  |  |  |  |  |  |  |
| Average Number of Bills per Trailer |  |  |  |  |  |  |  |
| Average Number of Bills per Hour |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Fork-Moved Loads Only |  |  |  |  |  |  |  |
| Average Weight per Bill |  |  |  |  |  |  |  |
| Average Pieces per Bill |  |  |  |  |  |  |  |
| Average Standard Work per Bill |  |  |  |  |  |  |  |
| Average Number of Bills per Trailer |  |  |  |  |  |  |  |
| Average Number of Bills per Hour |  |  |  |  |  |  |  |